JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Glen Fannin guilty of two counts of possession of heroin and two counts of preparation of drugs for sale.
 {¶ 2} Two Cleveland Metropolitan Housing Authority ("CMHA") police officers were on patrol when they spotted a car driven by Fannin being followed by another car, driven by codefendant Henry Young. Young repeatedly flashed his high beam lights until Fannin pulled over to the curb. Young exited his vehicle and walked to the passenger side window of Fannin's car. One of the officers testified at trial and said he observed Young reach into his right-hand pocket, take out some currency, and exchange it in a "hand-to-hand transaction" with Fannin.
 {¶ 3} Young started back to his car, unaware that the CMHA police witnessed the transaction. The officers exited their cruiser and started walking toward Young. When Young saw the officers, he became nervous and tried to put his left hand in his left pants pocket. The officers told Young to keep his hands out of his pockets. They then recovered some small blue packets that were later found to contain heroin.
 {¶ 4} As the officers arrested Young, they saw Fannin exit his car and start to walk away. They advised Fannin to return to his vehicle and wait. The officers called the police station and asked the canine unit to respond to the scene. A drug-sniffing dog entered the car and alerted the officers to the presence of drugs inside the center console of Fannin's car. When the officers opened the console, they discovered a plastic pill bottle containing sixty blue packets of heroin that matched those recovered from Young. The officers arrested Fannin. During an inventory search of the vehicle's trunk, they found paraphernalia for manufacturing and distributing drugs, some of which contained heroin residue. Of note, the officers found three more blue packets of heroin and thirty-two empty packets. They also recovered over $3,000 in cash from Fannin.
 {¶ 5} Fannin testified and denied any involvement with a drug transaction. He claimed that the car he was driving belonged to his ex-wife, and that he had no knowledge of the drugs in the center console or the items in the trunk. He theorized that the ex-wife's son, a drug user, had used the car and left his drugs in it. Fannin said that he parked in the area because he was trying to sell a car he owned. Young approached him to inquire about a job (Fannin ran a contracting business) when the police arrived. Young also testified and, while admitting that he pleaded guilty to a possession charge stemming from the events of that evening, nonetheless denied that he bought the heroin from Fannin.
 I {¶ 6} The first, second, third and fourth assignments of error raise issues relating to Fannin's abortive attempt to have the court suppress evidence of the heroin found in his car. He claims (a) his arrest by CMHA police officers was illegal because he was on a public street, (b) there was no probable cause to detain him in his car, and (c) the court failed to make findings of fact and conclusions of law when ruling on the motion to suppress.
 A {¶ 7} Fannin first maintains that the CMHA officers made an extra-territorial arrest because he had been on land located in the city of Cleveland. At the time of the offense, Fannin had been parked on a street located within the city of Cleveland. When Young walked up to Fannin's car and leaned inside, he was standing on a tree lawn located within CMHA property.
 {¶ 8} We can reject this argument without discussing the merits of Fannin's claim because even if Fannin were correct in maintaining that he had not been on CMHA property at the time of arrest (a fact we do not decide), that fact would not warrant suppressing evidence. In State v.Paul, Cuyahoga App. No. 79596, 2002-Ohio-591, we considered the same argument (offered by the same counsel here) and stated:
 {¶ 9} "Even if we were to accept the defendant's argument that his arrest occurred in the city of Cleveland, not on CMHA property, it would not form the basis for any relief. The exclusionary rule is only used to remedy violations of constitutional rights and not violations of state statutes. See Kettering v. Hollen (1980), 64 Ohio St.2d 232, 234-235, 416 N.E.2d 598. The courts have held that a violation of R.C. 2935.03(D) does not rise to the level of a constitutional violation, thus precluding the suppression of evidence for that reason. See State v. Riggenbach (1994), 97 Ohio App.3d 661, 663, 647 N.E.2d 246; State v. Coppock (1995), 103 Ohio App.3d 405, 412, 659 N.E.2d 837; State v. Bostwick, 2000 Ohio App. LEXIS 657 (Feb. 24, 2000) Cuyahoga App. No. 75124, unreported. Even had the facts precluded application of R.C. 2935.03, the court could not have granted the motion to suppress on that ground."
 {¶ 10} Paul controls resolution of this issue.
 B {¶ 11} Fannin next argues that the police lacked probable cause to detain him in his vehicle after they had stopped Young because they could only testify to having seen Young exchange currency for an "unknown substance." He claims this transfer could not give the police probable cause to arrest him. The state argues that the police did not order Fannin to return to the car, but merely asked him to do so, in what it characterizes as an entirely voluntary encounter.
 {¶ 12} We think both Fannin and the state have it wrong. Probable cause for an arrest exists when officers have "facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information" that would sufficiently "warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v.Ohio (1964), 379 U.S. 89, 91. The facts presented at the suppression hearing show that the police witnessed a transaction between Young and Fannin. They watched Young walk away from Fannin's car holding several small packets that he obtained in return for currency. The officers immediately stopped Young and determined that the packets contained heroin. They then arrested Young. Having satisfied themselves that Young had obtained illegal narcotics in a transaction with Fannin, the police had probable cause to arrest both men. See State v. Putnam (Oct. 11, 2001), Cuyahoga App. No. 78686.
 {¶ 13} It was at this point that Fannin left his own car and started to walk away. Having witnessed a suspicious transaction and recovered from Young packets of drugs that had been the object of the transaction, the police had probable cause to arrest Fannin on drug trafficking charges. They were legally entitled to detain Fannin and did so by ordering him back into the car. Any discussion of a Terry search is irrelevant to the facts of this case since the police had far more than a reasonable suspicion that criminal activity occurred, they had proof in their hands.
 {¶ 14} Our finding that the police had probable cause to arrest Fannin at the time it recovered the suspected heroin from Young makes any discussion of issues relating to the length of time that Fannin was held in the car unnecessary.
 C {¶ 15} Fannin argues that the court failed to make any findings on the motion to suppress, despite his having filed a motion for findings of fact two days after the court hearing concluded.
 {¶ 16} Crim.R. 12(F) requires the court to state on the record findings when factual issues are involved in determining a motion. "In order to invoke the rule, the defendant must request that the court state its essential findings of fact in support of its denial of a motion."State v. Eley, 77 Ohio St.3d 174, 179, 1996-Ohio-323. However, a trial court's failure to provide its essential findings on the record is not fatal where the record provides a sufficient basis to review appellant's assignment of error regarding the motion. State v. King (1999),136 Ohio App.3d 377, 381; Zanesville v. Osborne (1992), 73 Ohio App.3d 580,584.
 {¶ 17} Although the court should have issued findings of fact upon Fannin's request, it's failure to do so is not fatal. The version of facts presented at the suppression hearing were so diametrically opposed that the court's ruling could only be interpreted as a rejection of Fannin's version in favor of that given by the testifying police officers. The facts presented at the hearing were more than sufficient to enable our review, so we find the court's error harmless.
 II {¶ 18} Fannin's third assignment of error complains that the court denied him due process of law when it restricted his cross-examination of a CMHA police officer. During questioning of the witness, defense counsel referenced a report and asked if the witness prepared the report. The witness replied, "No, that's not my report" and said that his report was on the prosecutor's table. When defense counsel asked the court for permission to examine the report laying on the prosecutor's table, the court said, "I don't think so. Absolutely not." Defense counsel persisted in questioning the witness about the report that he denied making. The state objected and the following transpired:
 {¶ 19} "THE COURT: Please don't answer that. I am not sure where you obtained that. Put that away.
 {¶ 20} "MR. P. MANCINO: Pardon?
 {¶ 21} "THE COURT: You heard me.
 {¶ 22} "MR. P. MANCINO: We got it from the police department.
 {¶ 23} "THE COURT: I don't know how.
 {¶ 24} "MR. P. MANCINO: We asked for it.
 {¶ 25} "THE COURT: Counsel, knock it off in front of the jury. Ladies and gentlemen, you are instructed to disregard that last question and it is stricken from the record."
 {¶ 26} Fannin raises two issues under this assignment. The first is that the court erred by denying him access to the report laying on the prosecutor's trial table. Police reports are not discoverable under Crim.R. 16(B)(2). See State v. Casalicchio, Cuyahoga App. No. 79431, 2002-Ohio-587; City of Cleveland v. Lane (Dec. 9, 1999), Cuyahoga App. No. 75151. An accused may be entitled to an in-camera review of a police report if the accused can demonstrate an entitlement to the police report by showing that the record is potentially exculpatory or otherwise relevant to the preparation of a defense. State v. Simmons (1993),87 Ohio App.3d 290, 293.
 {¶ 27} Counsel engaged in a fishing expedition by asking for a CMHA police report that he was obviously not entitled to receive in discovery. Fannin gave the court no reason whatsoever to think that the report contained potentially exculpatory material or information that would aid in the preparation of a defense. This was demonstrated by the spur-of-the-moment nature of the request. Moreover, the court did not err by admonishing counsel for making the request in front of the jury. Counsel should have known better than to request the report in front of the jury. It is one thing to be on a fishing expedition, it is quite another thing to do one's angling in front of the jury when it might impact the jury's view of the case.
 {¶ 28} The second issue in this assignment goes to cross-examination of the CMHA officer with a report prepared by the Cleveland Police Department and obtained by the defense. Once the CMHA officer denied making the Cleveland report, there was no further basis for questioning the officer. The court did not unduly restrict Fannin's cross-examination.
 III {¶ 29} Fannin next argues that the court denied him due process of law by permitting a state witness, a Cleveland police officer, to testify even though the state did not disclose the witness in advance of his testimony and the witness was present in the courtroom during prior testimony.
 A {¶ 30} Crim.R. 16(B)(1)(e) requires the state to furnish the accused with a list of all witnesses whom the state intends to call at trial. The court may in its discretion permit a previously unidentified witness to testify if the record does not show (1) a willful violation of the rule, (2) that foreknowledge would have benefitted the accused in the preparation of his defense, or (3) that the accused was unfairly prejudiced. State v. Scudder (1994), 71 Ohio St.3d 263, 269. In the event a party fails to comply with discovery obligations, the court may "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." See Crim.R. 16(E)(3).
 {¶ 31} The witness at issue was a Cleveland police officer. The state conceded that it did not list the witness on pretrial witness lists, but claimed that its need for his testimony did not arise until the defense put forward the theory in opening argument that Fannin did not own the car he was sitting in when caught selling drugs. The witness would give testimony that he knew Fannin and had seen Fannin driving the car in question on four occasions during a two to three week period before Fannin's arrest. The court conducted a voir dire of the witness in which he acknowledged seeing Fannin driving the car that he had denied owning. The court permitted the officer's rebuttal testimony over defense objections, and the officer testified that he had seen Fannin driving the car, but conceded that the car had been registered in the name of Fannin's ex-wife.
 {¶ 32} The court did not abuse its discretion by permitting the testimony even though the witness had not been listed in discovery because the state could not reasonably anticipate that Fannin would claim he was not the car's primary driver. Fannin was a construction contractor. The car's trunk contained building materials and tools consistent with someone engaged in that trade. Based on these facts, the state could reasonably believe that Fannin had primary control over the car and, by reference, its contents including the drugs and paraphernalia stored with the building materials. It had no reason to anticipate that Fannin would claim that he had no control over the contents of the car.
 {¶ 33} We also find no prejudice to the defense because Fannin corroborated the officer's testimony that the car belonged to his ex-wife. Moreover, Fannin did not dispute that he drove the car. He simply theorized that the drugs in the car belonged to his ex-wife's son, whom he said was a drug addict. He makes no claim that he would not have offered this theory of his case had the officer's testimony been disclosed beforehand. And even had the substance of the testimony been disclosed before trial, it would be a poor argument for Fannin to say that he would not have offered the theory in the first place for it suggests that Fannin's testimony was forthcoming only because he did not believe that the state would have the opportunity to rebut it.
 B {¶ 34} Fannin also argues that the court should not have permitted the Cleveland officer's testimony because he was present in the courtroom during the suppression hearing, even though he did not testify as a witness.
 {¶ 35} Evid.R. 615 requires, upon request of a party, the exclusion of witnesses so that they cannot hear the testimony of other witnesses. In State v. Smith (1990), 49 Ohio St.3d 137, 142, the Ohio Supreme Court stated:
 {¶ 36} "Exclusion of witnesses is ordinarily a decision within the sound discretion of the trial court. However, where the court seeks to exclude a witness for violating a separation order, there must be a showing that the party calling the witness consented to, connived in, procured or had knowledge of the witness' disobedience. Secondly, the testimony sought to be introduced must be important to the defense such that exclusion of the evidence constitutes prejudicial error."
 {¶ 37} The voir dire of the Cleveland officer showed that he was only present for testimony during the suppression hearing, not trial testimony. Moreover, his testimony went to a very specific issue — that he had four times in a two-week period seen Fannin driving the car that he claimed he did not own. There was nothing that he would have learned in the suppression hearing that could have tainted his trial testimony. The court gave the matter every consideration and the absence of any prejudice demonstrates that it did not abuse its discretion by permitting the testimony.
 IV {¶ 38} Fannin argues that he was denied his right to cross-examination when the court permitted the canine handler to testify that when he arrived on the scene, a CMHA police officer told him that he observed Fannin and Young engage in a drug deal and that he recovered thirty packets of heroin from Young.
 {¶ 39} We have consistently ruled statements offered by police officers to explain their conduct while investigating a crime are not hearsay because they are not offered for their truth, but as an explanation of the process of investigation. See State v. Price (1992),80 Ohio App.3d 108, 110; State v. Braxton (1995), 102 Ohio App.3d 28,49; State v. Blevins (1987), 36 Ohio App.3d 147, 149; State v. Paul, supra. The canine handler's statements were offered to show why he deployed the canine, and not for the truth that heroin had been found on Young.
 V {¶ 40} Fannin next argues that the court permitted highly inflammatory opinion testimony by the CMHA officers. The arresting officer said that he regarded the transaction he witnessed as being consistent with drug dealing. He also testified that the manner in which the packets were wrapped was consistent with how drugs were sold on the street. The canine handler testified that the materials found in Fannin's trunk were "consistent with somebody that would be a major dealer for us."
 {¶ 41} We rejected a similar argument in State v. Paul, supra:
 {¶ 42} "Because some police officers, like the undercover officer in this case, make thousands of drug arrests, they bring a great deal of experience to a case. The courts generally permit the police to explain why they believe that certain actions by an accused constituted drug trafficking. In State v. Barnett (Sept. 22, 1992) Franklin App. No. 92AP-345, unreported, the Tenth District stated:
 {¶ 43} "* * * [A] police officer is permitted to testify concerning his own expertise as to the behavioral and language patterns of people commonly observed on the streets, including people associated with criminal activities, in a manner helpful for the jury's clear understanding of the factual issues involved.
 {¶ 44} "* * *
 {¶ 45} "Likewise, in State v. Hines (Aug. 23, 2001) Cuyahoga App. No. 78808, unreported, we credited testimony by police officers who claimed that a large amount of cash found on an alleged dealer, and the manner in which the money had been crumpled, was consistent with drug dealing.
 {¶ 46} "By giving explanations as to why certain conduct by the defendant roused his suspicions that drug activity was occurring, the officer was able to articulate to the jury his reasons for believing that the defendant had been selling drugs. So the officer's testimony served to refute the defendant's denial that he had been engaging in drug activity."
 {¶ 47} As in Paul, the officers stated their reasons for suspecting that a drug transaction had taken place. The court did not err by permitting this testimony.
 VI {¶ 48} Fannin believes the court denied him a fair trial when it permitted the state to engage in an "abusive" cross-examination of defense witness Henry Young. Young revealed that he recognized Fannin's car on the evening in question because he and Fannin went to the same methadone clinic for heroin addiction treatment.
 {¶ 49} Misconduct by the state rises to the level of reversible error when the conduct is (1) improper and (2) prejudicially affects substantial rights of the accused. See State v. Lott (1990),51 Ohio St.3d 160, 165. When a claim of misconduct concerns the questions asked on cross-examination, we are mindful that the scope of cross-examination rests within the sound discretion of the trial court.State v. Ferguson (1983), 5 Ohio St.3d 160, 165-166.
 {¶ 50} Fannin does not expressly state a basis for his claim of prosecutorial misconduct, other than to give us a citation to authority for the proposition that cross-examination cannot be used to admit otherwise inadmissible evidence. While we can agree with that statement as an abstract principle of law, it has no application here as Fannin fails to explain just how the state used cross-examination for an improper purpose. See App.R. 12(A)(2); State v. Stojetz, 84 Ohio St.3d 452,455, 1999-Ohio-464.
 {¶ 51} Our review of the specific instances of claimed error convince us that no error occurred. When the accused puts on a witness in his defense, he runs the risk that the witness will be impeached. See Evid.R. 607. In Young's case, this was a simple matter for the state, as he had an extensive criminal history and was an admitted heroin addict. He testified that he had been visiting a friend and saw Fannin's car. When the state asked Young to tell the jury about the first time that he saw Fannin's car, Young said that he and Fannin went to the same "clinic." Young's drug use was fair game for impeachment, and the state's question about seeing Fannin driving the car was appropriate in light of Fannin's testimony that he did not own the car.
 {¶ 52} The remaining instances were not error, either because the court sustained an objection and ordered the jury to disregard the question, or that the questions were so obviously proper that they admit no further discussion.
 VII {¶ 53} The state's closing argument is the source of several claimed errors. Fannin argues that the state improperly commented on (1) the street value of the heroin seized during the arrest, (2) Fannin being in the drug trafficking business, and (3) appealing to the jury's social conscience by asserting Fannin had been in "a business to sell drugs in our community."
 {¶ 54} The state erroneously told the jury that the heroin seized during arrest had a street value of $26,000. The canine handler testified that the packets of heroin sold "for about $20 a pack" and that there were sixty packets of heroin in the bottle taken from Fannin's car. The $26,000 number offered by the state grossly overstated the actual street value.
 {¶ 55} Nevertheless, the court made it clear to the jury that counsel's arguments did not constitute evidence. The jury obviously took this instruction to heart, as they found the amount of heroin taken from Fannin's car to be between ten and fifty unit doses. To make that finding, the jury must have rejected testimony that sixty packets were found in the plastic pill bottle. Consequently, the mistaken street value could not have affected the jury's verdict.
 {¶ 56} The comments about Fannin conducting a drug "business" were fairly taken from the record. The evidence showed that the items found in the trunk of Fannin's car were often used in trafficking heroin.
 {¶ 57} Finally, we are unable to say that the state's reference to Fannin's having a "business to sell drugs in our community" was an appeal to the jury's conscience. Ordinarily appeals to the jury's conscience as a reason to convict an accused are improper because it suggests that the jury can convict on grounds other than the evidence. The state could have made a better choice of words, for its use of the word "community" might suggest an appeal to the jury's conscience. But taken in context, the state's comment did not make a direct appeal for the jury to convict based on its conscience. We find no error.
 VIII {¶ 58} During closing argument, Fannin's counsel tried to comment on the state's failure to call as a witness the CMHA police officer's partner who also participated in the arrest. The court sustained the state's objection and cautioned the jury to disregard any comment regarding persons who had not been called to testify.
 {¶ 59} This assignment of error brings into issue an interesting interplay between accepted law and the Criminal Rules. The state is entitled to note to the jury that a witness other than the accused did not testify as part of a defense failure to offer evidence in support of its case. See State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193; Statev. Williams (1986), 23 Ohio St.3d 16, 19-20. However, Crim.R. 16(B)(4) and (C)(3) state that "[t]he fact that a witness' name is on a list furnished under [a list of witness names], and that such witness is not called shall not be commented upon at the trial."
 {¶ 60} The interpretation of Crim.R. 16(B)(4) and (C)(3) seems obvious — it is intended to prevent any comment on the fact that a witness had been listed on a witness list but not called as a witness during the case. The idea behind the rule is to prevent a party from using something not in evidence, by implying that some defect in the case forced the opposing party to keep the listed witness from testifying.
 {¶ 61} But what seems obvious is not always the case. In State v.Hannah (1978), 54 Ohio St.2d 84, 90, the Ohio Supreme Court applied the rule in a very broad fashion to prohibit a party from mentioning another party's failure to present a witness at all as long as the name appeared on a witness list. Some of the courts of appeals have not been happy with this result. In State v. Gunther (1998), 125 Ohio App.3d 226, the court actually chose to follow the approach set forth by the dissenting justices in Hannah, and ruled that Crim.R. 16(C)(3) was not designed to preclude valid comment upon the absence of a witness that would apply irrespective of the name being included in response to discovery. See, also, Jackson v. Howell (1993), 86 Ohio App.3d 497, 500.
 {¶ 62} We do not have to openly disregard Hannah, as the Ohio Supreme Court has apparently done it for us. In State v. Davie (1997),80 Ohio St.3d 311, 331, the Court considered the issue in circumstances where a comment about Davie's failure to have a witness testify did not involve a witness named on a list pursuant to Crim.R. 16. For that reason, the Court found that the rule did not apply. However, the Court went on to say, "[a]dditionally, comments that a witness other than the accused did not testify are not improper. See State v. D'Ambrosio
(1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916." This comment inDavie leads us to believe that the Supreme Court has backed off fromHannah and will now interpret Crim.R. 16(B)(4) and (C)(3) to apply only in circumstances where a party intentionally tries to convince a jury that the opposing party had contemplated calling a witness by putting that witness's name on a witness list, but decided against calling the witness. Otherwise, we believe the Court will continue to sanction the longstanding rule that a party may comment on an opponent's failure to call a witness.
 {¶ 63} With this interpretation in mind, the court should have permitted Fannin to mention the absence of the second CMHA police officer. But that error was not prejudicial in the least. The state marshaled a great deal of evidence to show that Fannin had been engaging in a drug transaction. We are convinced that the result of trial would not have been any different had the court permitted the comment.
 IX {¶ 64} During trial, the court became irritated that Fannin did not issue a subpoena in order to procure the attendance of witness Henry Young. This apparently necessitated the court's bailiff taking steps to have Young, then incarcerated, brought to the courtroom. An argument between the court and defense counsel led to Fannin requesting either a mistrial or that the trial judge recuse herself from the proceedings. The court refused to grant either option.
 {¶ 65} In anticipation of Young's testimony, the court asked defense counsel if he wished to have Young brought to court. Defense counsel said that he did want Young as a witness, and the court's bailiff brought Young to the court. Telling defense counsel that it was a great inconvenience to have brought Young in to testify, the court reprimanded defense counsel for failing to issue a subpoena and warned counsel that "you will be held in contempt of Court if you don't properly subpoena your witnesses." Defense counsel reminded the court that it volunteered to get Young. The court said, "of course I volunteered. But what I am telling you, instead of arguing with the Court, if you ever do this in my courtroom again, you will be in contempt." When the court pressed defense counsel to acknowledge that he understood, counsel hesitated and said, "I don't know why you are all upset over this, because you are the one who volunteered. Had you not volunteered, I would have brought a subpoena. But you volunteered." At that point, the court disagreed with counsel's version of the facts and gave the following explanation of what happened:
 {¶ 66} "That's not how this happened. Just so the record is clear. I did not have a court subpoena. There were two co-defendants in the file and I asked you did anyone subpoena this witness, because when I asked my bailiff if Mr. Young was up, he said no one ordered him. In order to be accommodating to counsel, I offered at that point to order him for you if I could.
 {¶ 67} "I don't understand why you are being disrespectful. I am not the one who is upset. My bailiff is quite upset. You owe him an apology."
 {¶ 68} The court recessed and the next day defense counsel asked the court to declare a mistrial on grounds that the court had a bias against defense counsel. In the alternative, defense counsel asked that the judge recuse herself or, barring recusal, permit defense counsel to withdraw and have new counsel appointed. The court denied all three requests and went on to assail defense counsel for his lack of respect.
 {¶ 69} It is difficult for an appellate court to referee personality conflicts between court and counsel because what appears on a transcript may not fully convey what actually transpired in the courtroom. If the court volunteered to bring in a witness, we are hard-pressed to understand why it reacted so negatively after-the-fact. We are equally hard-pressed to understand why the court believed a long lecture on counsel's perceived lack of respect would serve its intended purpose — it likely had the opposite effect. We see nothing in the record to show that counsel failed to respect the court as an institution. Respect on a personal level is another thing. That kind of respect is something earned through performance, not title or position. All the haranguing in the world will be lost if the person seeking respect does so only on the basis of position, not performance.
 {¶ 70} But in the end, we see nothing in the record to suggest that any of the court's rulings were biased against Fannin due to a personality conflict with defense counsel. Whatever transpired in this case occurred outside the hearing of the jury and could not have affected the jury's verdict in any way.
 X {¶ 71} The court instructed the jury that it could convict Fannin if it found that he constructively possessed the heroin. Fannin maintains this amounted to an improper amendment of the indictment.
 {¶ 72} We rejected an identical argument in State v. Franklin
(May 10, 2001), Cuyahoga App. No. 77385, saying:
 {¶ 73} "On appeal, defendant contends that the concept of constructive possession constituted an improper amendment to the indictment which charged him with possession. However, the Ohio Supreme Court has recognized that, as instructed by the trial court, possession may be actual or constructive. State v. Wolery (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351." See, also, State v. Scott (Dec. 14, 2000), Cuyahoga App. No. 77461 (no error in giving jury instruction on constructive possession of a deadly weapon for having a weapon while under a disability count because the charges of carrying a concealed weapon and having a weapon under a disability necessarily include either actual or constructive possession of a deadly weapon or dangerous ordnance).
 XI {¶ 74} Fannin next complains that the court erred when it denied his motion for judgment of acquittal.
 {¶ 75} Viewing the evidence in a light most favorable to the state, we conclude that reasonable minds could have reached different conclusions on whether the state established the elements of the charged offenses. Crim.R. 29(A); State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. The evidence showed that Fannin had sixty packets of heroin in his car, along with materials that were often used for preparing drugs for sale. The evidence also showed that Fannin used the car as though it were his own. The presence of construction materials in the trunk corresponded to his claim that he was a building contractor and supported the conclusion that he owned the car.
 {¶ 76} As for Fannin's claim that the court included duplicative counts relating to the heroin found in his car, we find no error. One count charged heroin found packaged in unit doses; the other charged heroin found in the trunk in various forms and packaging. The different means of preparing the heroin constituted separately chargeable offenses.
 XII {¶ 77} Fannin next argues that the court erred by refusing to sentence him to the minimum sentence. Although Fannin had served jail time in 1969 for robbery and had several drug convictions without jail time, the court decided to treat him as a new offender. It sentenced him to minimum terms on all but one count. On count 5, the court sentenced Fannin to six years, two less than the maximum.
 {¶ 78} R.C. 2929.14(A)(2) requires the court to impose the shortest prison term on an offender who has not previously served a prison term. We assume without deciding that the court had the discretion to consider that Fannin had not previously served a prison term, despite knowing otherwise. We do so because we recognize that under the circumstances the court could have sentenced him to a minimum term regardless of whether he had previously served a prison term, so its decision to voice its thought process on the matter is of no real consequence in this case. As a matter of form, however, a previously served prison term should not be characterized as something different merely because of the passage of time. The passage of time does not nullify the prison term, although it may be a factor in mitigation of a new prison term. As long as the court clearly states that it considers the length of time between prison terms as mitigation, as the court did in this case, there will be no error. The courts are not at liberty to disregard a previously served prison term.
 {¶ 79} Although there is a statutory presumption of a minimum term for offenders who have not previously served a prison term, that presumption can be overcome if the court finds that imposing the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender. See R.C. 2929.14(A)(2). The court made these express findings, stating that it considered the large amount of heroin found in Fannin's trunk to constitute a serious danger to the public. We find no error with the sentence on count 5.
 XIII {¶ 80} Fannin argues that the court erred by failing to merge the convictions on count 1 and count 5 for sentencing. Count 1 charged possession of heroin found in the console of Fannin's car. Count 5 charged possession of heroin found in the trunk of Fannin's car. He claims this simultaneous possession should have been sentenced as one offense.
 {¶ 81} The heroin found in Fannin's car was not capable of simultaneous possession in a sense that would permit the court to merge the counts for sentencing purposes. The heroin found inside the center counsel had been packaged for sale; the heroin found inside the trunk had yet to be prepared for sale. This distinction meant that a separate animus could have existed for the heroin. That being the case, the court did not have to merge the counts for sentencing under R.C. 2941.25(B).
 XIV {¶ 82} Fannin's next three arguments relate to the forfeiture of $3,275 found on him after his arrest.
 A {¶ 83} The cash found on Fannin comprised part of count 7 of the indictment which charged him with possession of criminal tools. The jury found Fannin not guilty of the charge. He now argues that his acquittal on the possession of criminal tools charge foreclosed any forfeiture of the cash because it had subjected him to a second prosecution in violation of his right not to be held in jeopardy twice for the same offense.
 {¶ 84} Contraband seized by law enforcement officers is subject to forfeiture. See R.C. 2933.43(A)(1). In some circumstances, money can be considered contraband if it is used as part of an attempt or conspiracy to commit a violation of R.C. Chapter 2925. See R.C. 2901.01(A)(13);State v. Marshall (Aug. 3, 1995), Cuyahoga App. No. 66409. Although the jury acquitted Fannin of criminal tool charges relating to the money, that fact alone did not change the character of the money as contraband. The elements of a charge of possessing criminal tools require that the offender use the tool with a criminal purpose. See R.C. 2923.24(A). Contraband is an item that is illegal because of its possession in the context of committing an act. Even though the jury did not find that Fannin used the money with a criminal purpose, that money could still be considered part of the criminal act. The testimony showed as much, as there was sufficient evidence to show that Fannin exchanged drugs for money. The money he held could be classified as contraband.
 B {¶ 85} Fannin next complains about a lack of notice for the forfeiture hearing, claiming that he did not personally receive notice of the forfeiture hearing, although admitting that his attorney did receive notice.
 {¶ 86} We are aware that compliance with the forfeiture statute is mandatory and that strict compliance with the notice and publication provisions of R.C. 2933.43(C) is required. See Ohio Dept. of LiquorControl v. Sons of Italy Lodge 0917 (1992), 65 Ohio St.3d 532, syllabus. Nevertheless, the Ohio Supreme Court has held that "proceedings under R.C. 2933.41 are criminal in nature but civil in form." State v.Lilliock (1982), 70 Ohio St.2d 23, paragraph two of the syllabus. The Rules of Civil Procedure apply to forfeiture proceedings, see State v.Golsten (1990), 66 Ohio App.3d 423, 430, particularly Civ.R. 5(B) which permits service upon a party's attorney. Fannin agreed at the hearing that he received notice by mail of the forfeiture as well as in the Daily Legal News (the Daily Legal News is the official publication of the Cuyahoga County Court of Common Pleas — see Loc.R. 14(A) of the Cuyahoga County Court of Common Pleas), so he had proper notice.
 {¶ 87} Fannin now claims that the notice itself was not clear as to "what the underlying forfeiture is about." That remark was completely contradicted by counsel's later acknowledgment that notice published in the Daily Legal News listed the proceeding as "In Re: Forfeiture of $3,275 of United States Currency."
 {¶ 88} Fannin's remaining claims about notice are equally preposterous. He not only received proper notice of the forfeiture petition, he actually filed a motion to dismiss the petition in advance of the scheduled hearing.
 C {¶ 89} Lastly, Fannin argues that the state failed to show the requisite elements to support forfeiture. He claims that his testimony showed that he carried such a large amount of cash because he generally paid his construction workers in cash. He also claims that the officer's testimony about witnessing an exchange of money for drugs had to be false because the car had tinted windows that made it impossible to see the interior.
 {¶ 90} Because a forfeiture case is civil in nature, the state's burden of proof is only a preponderance of the evidence. See R.C.2933.43(C); City of Garfield Hts. v. Skerl (1999), 135 Ohio App.3d 586. With that standard in mind, we find the court heard sufficient evidence to permit it to order the cash to be forfeited. The police officer's testimony established that money had been exchanged for heroin. Fannin's argument that no reasonable person could have believed the officer's testimony because it would have been physically impossible to see through the tinted windows goes to the manifest weight of the evidence. "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 91} We find competent, credible evidence supported the court's factual finding regarding the exchange.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., CONCURS.
 DIANE KARPINSKI, J., DISSENTS WITH SEPARATE DISSENTING OPINION.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).